■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DICSON PENA, Appellant. [618 NYS2d 149] —Cardona, P. J. Appeal from a judgment of the County Court of Schenectady County (Harrigan, J.), rendered May 24, 1993, upon a verdict convicting defendant of, *inter alia,* the crime of criminal possession of a weapon in the third degree.

On August 13, 1991, at approximately 4:00 A.M., State Troopers Alan Lane and Donald Ernst were patroling westbound on the Thruway when they observed an automobile with a missing license plate light. Lane activated his emergency lights and stopped the automobile. He approached the driver's side window and asked the driver, defendant, for his driver's license and registration. Defendant produced a New Jersey license but told Lane that he did not know either where the registration was or who owned the car. Codefendant Hector Pena, seated in the back seat, told Lane that he borrowed the car from a friend but could not remember the name. Lane asked defendant to step to the back of the vehicle and he complied. In response to Lane's questions, defendant repeated that he did not know who owned the car nor the location of the registration. Lane then returned to the front of the car and spoke with Pena in the backseat.

During this conversation, Lane, with the aid of his flashlight, observed marihuana consisting of seeds and some vegetation on the rear floor of the vehicle. Lane retrieved the marihuana and asked Pena if he had any more in the car; Pena replied, "No. Go ahead and check the car out. Go ahead and look if you want." Lane went back and asked defendant if he had any contraband, any illegal guns, knives or drugs in the car, and defendant replied, "No. You can look." At that point Lane decided to call for a Trooper to bring him consent-to-search forms because there were none available in his vehicle. He asked both defendants if they read English or Spanish better and they both indicated Spanish. Lane provided each defendant with a Spanish version of the consent and both executed a form. A search of the passenger compartment revealed a revolver found protruding from the recess of

the dashboard and a search of the trunk disclosed a quantity of cocaine.*

Defendant was indicted for criminal possession of a controlled substance in the first degree, criminal possession of a weapon in the third degree, unlawful possession of marihuana and an equipment violation. Following a hearing, County Court denied defendant's motion to suppress physical evidence. After a jury trial, defendant was convicted of criminal possession of a weapon in the third degree and the equipment violation. Defendant was sentenced to a prison term of 2 to 6 years on the weapon charge and an unconditional discharge on the equipment charge. This appeal ensued.

Defendant contends that the denial of his motion to suppress was error. While not contesting the initial stop of the automobile for a traffic violation or the questioning subsequent to the discovery of the marihuana, defendant argues that the People failed to prove the voluntariness of the consent to search claiming that it was the product of an impermissible detention and interrogation (see, People v Hollman, 79 NY2d 181; People v Woods, 189 AD2d 838).

Initially, we note that it was permissible for Lane, having observed the commission of a traffic infraction, to direct defendant, the driver, to exit the car during the stop (see, New York v Class, 475 US 106, 115; People v Carter, 199 AD2d 817, 819). As the operator of the vehicle, defendant was obliged to produce the registration and supply " 'any information necessary for the identification of such vehicle and its owner' (Vehicle and Traffic Law § 401 [4])" (People v Glover, 163 AD2d 174, 175, lv denied 76 NY2d 986; see, People v Adams, 194 AD2d 102, 106). Defendant's inability to produce the registration, coupled with his statement and that of Pena that they did not know who owned the car, authorized the Troopers to detain the car and its occupants to run a radio check to ascertain whether the car was properly registered and/or whether it had been reported stolen (see, People v Alexander, 189 AD2d 189, 194; Wade v Fisk, 176 AD2d 1087, 1088, appeal dismissed, lv denied 79 NY2d 896).

Defendant points out that the officers failed to make a radio check. The record shows, however, that Pena kept speaking to Lane attempting to engage him in conversation during the entire time he was conversing with defendant. It appears that any delay in making a radio call was occasioned by further

---

* Because defendant was not found guilty of possessing the cocaine we do not address its seizure.

conversation with Pena after concluding conversations with defendant. The record does not establish that the Troopers purposefully delayed making a radio call in order to detain the car and its occupants in the hope that they could use the additional time to uncover facts suggestive of criminality. Weighing the degree of intrusion against the precipitating and attending circumstances *(see, People v Durgey,* 186 AD2d 899, 900, *lv denied* 81 NY2d 788; *People v Sora,* 176 AD2d 1172, 1173, *lv denied* 79 NY2d 864), we find nothing improper in the police conduct leading up to the search *(see, People v Sora, supra).*

Furthermore, from his vantage point outside the car, Lane was authorized to shine his flashlight into it to observe the car's darkened interior *(see, e.g., People v Class,* 63 NY2d 491, 494-495, *revd on other grounds* 475 US 106, *supra; People v Cruz,* 34 NY2d 362, 370, *amended* 35 NY2d 708; *People v Brown,* 116 AD2d 727, 729). Such acts do not "constitute a search within the meaning of the New York State or Federal Constitutions" *(People v Manganaro,* 176 AD2d 354, 355, *lv denied* 79 NY2d 860). Once Lane observed the marihuana in plain view inside the car, "he had the right to conduct a thorough search of the vehicle for additional contraband and the fruits, instrumentalities, or evidence of the crime in question" *(People v Sanders,* 143 AD2d 1063, *lv denied* 73 NY2d 982).

Furthermore, contrary to defendant's contention, the record amply demonstrates defendant's ability to speak and understand sufficient English to have orally consented to the search *(compare, People v Vasco,* 191 AD2d 602, *lv denied* 81 NY2d 1081). Applying the criteria set forth in *People v Gonzalez* (39 NY2d 122) and based upon the totality of the circumstances *(see, People v Sora, supra,* at 1174), we find that consent to have been voluntarily given. It is therefore unnecessary to address defendant's contention concerning the validity of the written consent.

Finally, we reject defendant's contention that Lane exceeded the scope of defendant's consent to "look" in the car. The record shows that the Troopers' examination of the passenger compartment was confined to an inspection of those areas plainly visible to an occupant of the vehicle *(compare, People v Guzman,* 153 AD2d 320) and that the handle of the revolver was observed, in plain view, protruding from the recess in the dashboard which ordinarily would have contained the radio. In any event, voluntary consent was not the sole legal justification for the search in this case. As previ-

ously noted, the officer's observations of the marihuana in plain view justified a thorough search of the vehicle.

Mikoll, Mercure, White and Yesawich Jr., JJ., concur. Ordered that the judgment is affirmed. [See, 156 Misc 2d 791.]